**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **INTEGON GENERAL INSURANCE CO.** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 19-4282** |
| | : | |
| **DAIRYLAND INSURANCE CO., et al.** | : | |

**MEMORANDUM**

**SCHMEHL, J. /s/ JLS**                                                                      **MAY 26, 2020**

      Plaintiff Integon General Insurance Co. ("Integon Insurance") brought this declaratory judgment action, seeking a declaration that it has no duty to defend or indemnify Defendants, David Foertsch ("Foertsch"), and/or Tyler Shissler ("Shissler") against claims asserted against them in the complaint captioned as Dairyland Insurance Company ("Dairyland Insurance") a/s/o Luis Garcia v. Tyler D. Shissler and David G. Foertsch, Case No.: 502019CA001963, in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida (the "Underlying Litigation"). Integon also named Shissler and Foertsch as Defendants in this case. Neither has chosen to participate in this litigation and a default was entered against both Shissler and Foertsch on January 28, 2020. Integon has since filed motions for default judgment against both Shissler and Foertsch. Presently before the Court are the cross-motions for summary judgment of Integon and Dairyland. For the reasons that follow, Integon Insurance's motion will be granted and Dairyland's motion will be denied.

      The parties have stipulated to the following facts:

1. On August 10, 2016, Shissler, was involved in an automobile accident while driving a 2013 Volkswagen Jetta bearing a Pennsylvania license plate "JYB2362," owned by Integon Insurance's insured, Foertsch. See ¶¶ 12-14 of the Complaint in the Underlying Litigation.

2. The accident involved Dairyland Insurance's insured, Mr. Garcia, who was injured as a result of the alleged negligence of Shissler. *Id.* at ¶¶ 20-21.

3. Mr. Garcia made an uninsured claim with Dairyland Insurance for his injuries. *Id.* ¶¶ 20-21.

4. Dairyland Insurance paid Mr. Garcia for his alleged injuries and then filed the Underlying Litigation as the subrogee. *Id.* at ¶¶ 20-22.

5. At the time of the accident in the Underlying Litigation, Foertsch, had an automobile insurance policy, Policy No. 2003563562 with Integon Insurance which was in effect from January 27, 2016, through January 27, 2017.

6. The Policy was in effect at the time of the accident at issue, and therefore, it fell within the coverage period. See ¶ 15 of Plaintiff Integon Insurance's Complaint [Doc. 1].

7. The Policy provides that Integon will defend and pay for damages "for **bodily injury** or **property damage** for which any insured becomes legally responsible because of an auto **accident**." See Subpara. A, PART A –LIABILITY COVERAGE, Insuring Agreement, Policy (page 3 of 20), (emphasis in original).

8. The Policy provides that an "Insured" is defined as:

   1. **You** or any **family member** for the ownership, maintenance or use of any auto or trailer, with the owner's permission.

>2. Any licensed driver using **your covered auto** with **your** permission.
>
>3. For **your covered auto**, any person or organization other than 1. and 2. above. This provision applies only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this PART.
>
> ****

See Subpara. B.1.-3., Insuring Agreement, Part A – Liability, Policy (page 3 of 20),

(emphasis in original).

9. The definition of a "covered auto" includes:

   Q. "**Your covered auto**" means:

   >1. Any **auto** shown in the **Declarations**.
   >
   >2. Any of the following types of vehicles on the date you become the registered owner, but only if you have – timely paid any additional premium after asking us to insure it as set forth below:
   >
   >   a. a private passenger auto or station wagon; or
   >
   > ***

If the auto you acquire replaces an auto shown in the Declarations, it will have the same coverage as the auto it replaced, if you:

>a. acquire the auto during the policy period; and
>
>b. ask **us** to insure it within 30 days after **you** become the owner; and
>
>c. insure all of the **autos you** own with **us**.

If **you** do not notify **us** within the time limit noted in b., no coverage exists for the replacement **auto**.

If the **auto you** acquire is in addition to any shown in the Declarations, it will have the broadest coverage we now provide for any **auto** shown in the Declarations, if **you**:

3

      a. acquire the **auto** during the policy period; and

      b. ask **us** to insure it within 30 days after **you** become the owner; and

      c. insure all of the **autos you** own with **us**.

If **you** do not notify **us** within the time limit noted in b., no coverage exists for the replacement **auto**.

See Q.1.-2., Definitions, Policy (pages 1-2 of 20), (emphasis in original).

10. The Policy further states, in relevant part,

    **PART A-LIABILITY COVERAGE**

    Insuring Agreement

    A. If you pay a premium for this coverage, we will pay damages, except punitive or exemplarily damages, for bodily injury or property damage for which any insured becomes legally responsible because of an auto accident. We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. If we defend, we will choose the counsel of our choice, which may include an in-house counsel. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend and when we offer to pay and pay our limit of liability for this coverage. We have no duty to defend any suit, settle any claim or pay any judgment for bodily injury or property damage not covered under this policy.

    B. "Insured" as used in PART A means:

    1. You or any family member for the ownership, maintenance or use of any auto or trailer, with the owner's permission.
    2. Any licensed driver using your covered auto with your permission.
    3. For your covered auto, any person or organization other than 1 and 2 above. This provision applies only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this part.
    4. For any auto or trailer, other than your covered auto, any person or organization other than 1 and 2 above. This provision applies only with respect to legal responsibility for acts or omissions of you or any family member for whom coverage is afforded under this part. This provision applies only if the person or organization does not own or hire the auto or trailer.

11. Further, the Exclusions section of the Liability portion of the Policy states:

4

**EXCLUSIONS**

   B. We do not provide liability coverage for the ownership, maintenance or use of:

   1.   Any auto, other than your covered auto, which is:

   a.   Owned by you; or
   b.   furnished or available for your regular use;

   2.   Any auto, other than your covered auto, which is:
   a.   Owned by any family member or person who has resided in your household for the six month period immediately prior to the accident;
   b.   furnished or available for the regular use of any family member or any person who has resided in your household for the six month period immediately prior to the accident.
   However, this exclusion, B 2, does not apply to you.

12. The 2013 Volkswagen Jetta bearing a Pennsylvania license plate "JYB2362," which was owned by Integon Insurance's insured, Foertsch, is not identified on the Declarations Sheet for the Policy.

13. Additionally, Shissler is not a listed driver on the Policy.

14. Integon Insurance is "without information" as to when Foertsch acquired the vehicle driven by Shissler in the accident which is at issue in the Underlying Litigation. See No. 1 of Integon Insurance's Answers and Objections to Defendant's Interrogatories dated January 27, 2020.

15. Integon Insurance "does not have information regarding every automobile owned by Plaintiff's named insured [Foertsch] as of the date of the underlying accident." *Id.* at No. 3 of Integon Insurance's Answers and Objections dated January 27, 2020.

16. Integon Insurance has conducted no discovery regarding when its insured, Foertsch, acquired the vehicle driven by Shissler in the accident which is at issue in the Underlying Litigation.

17. Integon Insurance has conducted no discovery regarding the identity of every automobile owned by Plaintiff's named insured, Foertsch, as of the date of the accident in the Underlying Litigation.

18. Neither Plaintiff, Integon Insurance, nor Defendant, Dairyland Insurance, served written discovery on or sought discovery from either Defendant, Shissler or Defendant, Foertsch

19. Foertsch, the purchaser and owner of vehicle involved in the subject motor vehicle accident, is a party to this action and has failed to enter an appearance or otherwise respond to Plaintiff's Complaint.

20. As such, default was entered against Foertsch on January 28, 2020.

21. A Motion for Default Judgment is pending against both Foertsch and Shissler. Neither have participated in this litigation.

On May 8, 2020, the Court directed Integon Insurance to file supplementary answers to Dairyland's Interrogatories ## 1 and 3. On May 12, 2020, Integon Insurance filed the following supplemental answers to Dairyland Insurance's Interrogatories ## 1 and 3:

> INTERROGATORY NO. 1: Please state when Plaintiff's named insured acquired the vehicle involved in the underlying accident. **ANSWER**: While Plaintiff is without specific information relating to the date that Mr. Foertsch purchased the vehicle involved in the underlying accident, Plaintiff does have information, contained within the attached Carrier Discovery Report for the vehicle, to indicate a date of acquisition of at or just prior to August 18, 2015. This Report

**6**

demonstrates that Mr. Foertsch acquired the vehicle in question, a 2013 Volkswagen Jetta, VIN 3VW2K7AJ5DM236534, prior to purchasing an insurance policy with Plaintiff. See attached Carrier Discovery Report [ECF 32-2]indicating coverage for the aforementioned vehicle with Progressive Groups before and after the date of the accident in question, August 9, 2016. Further, Geico Insurance Company provided coverage to Mary Foertsch on August 9, 2016 as that policy, Policy No. 4423946591, had effective dates 7/19/2016-1/19/2017. The Report also demonstrates that Mary Foertsch insured the vehicle with Progressive Groups with effective dates 8/19/18- 2/19/19, Policy No. 923865449AA091808. Further, according to the attached report, Defendant, David Foertsch insured the vehicle with Progressive Groups with effective dates 8/18/15-1/27/16, Policy No. 55567525AA370202. The report is devoid of any information to suggest that the vehicle in question was ever insured by Plaintiff. Plaintiff's named insured, David Foertsch, insured the vehicle a year prior to the accident in question with Progressive Groups, and then it was insured by another individual, Mary Foertsch, on the date in question. Though Plaintiff does not know the exact purchase date of the vehicle, it is clear the vehicle was acquired prior to named insured purchasing the relevant Policy with Plaintiff, as he had previously insured it with another company.

INTERROGATORY NO. 3: Please identify every automobile owned by Plaintiff's named insured as of the date of the underlying accident. **ANSWER**: Other than the Declarations pages for Plaintiff identifying listed vehicles previously produced, which Declarations pages do not list the vehicle in question in this matter, Plaintiff does not have conclusive information regarding every automobile owned by Plaintiff's named insured as of the date of the underlying accident. However, by way of further response, please see attached Carrier Discovery Report which does indicate other vehicles owned and insured by Defendant, Foertsch as indicated therein. Upon information and belief, Plaintiff believes that Mr. Foertsch acquired the vehicle in question, a 2013 Volkswagen Jetta, VIN 3VW2K7AJ5DM236534, prior to purchasing an insurance policy with Plaintiff. See attached Carrier Discovery Report indicating coverage for the aforementioned vehicle with Progressive Groups before and after the date of the accident in question, August 9, 2016. Notably, Geico Insurance Company provided coverage to Mary Foertsch on August 9, 2016 as that policy, Policy No. 4423946591, had effective dates 7/19/2016-1/19/2017. The Report also demonstrates that Mary Foertsch insured the vehicle with Progressive Groups with effective dates 8/19/18-2/19/19, Policy No. 923865449AA091808. Further, David Foertsch insured the vehicle with Progressive Groups with effective dates 8/18/15-1/27/16, Policy No. 55567525AA370202. Plaintiff's named insured, David Foertsch, insured the vehicle with Progressive Groups a year prior to the accident in question, and it was insured by another individual, Mary Foertsch, on the date in question.

[ECF 32-1.]

7

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986)). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In undertaking this analysis, the court views the facts in the light most favorable to the nonmoving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." *Pignataro v. Port Auth. of N.Y. and N.J.*, 593 F.3d 265, 268 (3d Cir. 2010) (citing *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 900 (3d Cir. 1997)). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the non-moving party who must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250.

With the inclusion in the record of Integon Insurance's Supplemental Answers to Dairyland's Interrogatories, the Court finds that this matter is now suitable for summary disposition.

Under Pennsylvania law, "the interpretation of an insurance contract regarding the existence or non-existence of coverage is generally performed by the court." *Gardner v. State Farm Fire & Gas. Co.*, 544 F.3d 553, 557 (3d Cir. 2008)

(quoting *Donegal Mut. Ins. Co. v. Baumhammers*, 938 A.2d 286, 290 (Pa. 2007)); see also *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 897 (Pa. 2006) ("The interpretation of an insurance contract is a question of law"). "When the language of the policy is clear and unambiguous, we must give effect to that language.", 938 A.2d at 290. If the language of the policy is ambiguous, the policy must be construed against the insurer. *Med. Protective Co. v. Watkins*, 198 F.3d 100, 103 (3d Cir. 1999).

Integon Insurance argues that it is entitled to declaratory relief because the vehicle involved in the accident in the Underlying Litigation was not a "covered auto" as that term is defined under the Policy. The Court agrees.

Under the Policy, there are several ways for a vehicle to qualify as a "covered auto." The first is that the vehicle must be listed in the Declarations. The parties have stipulated that "[t]he 2013 Volkswagen Jetta bearing a Pennsylvania license plate 'JYB2362,' which was owned by Integon Insurance's insured, Foertsch, is not identified on the Declarations Sheet for the Policy." Stip of Facts at ¶ 12.

Second, if a vehicle is not identified on the Declarations Sheet, it is still a "covered auto" as a "replacement vehicle" so long as the following conditions having been met: (1) the automobile was purchased to replace an automobile shown on the Declarations Sheet; (2) the automobile was acquired during the policy period; (3) the insured asks Integon Insurance to insure it within 30 days after the insured becomes the owner; and (4) the insured insures all of its automobiles with Integon Insurance. See Q.1.-2., Definitions, Policy (pages 1-2 of 20), Exh. B. If these specific conditions

9

precedent are met, an automobile, such as the 2013 Volkswagen Jetta, is a "covered auto," despite not being identified on the Declarations Sheet**.**

The Carrier Discovery Report, referenced by Integon Insurance in its Answer to Dairyland Insurance's Interrogatory #1, does not contain any information to suggest that the 2013 Volkswagen Jetta was ever insured by Integon Insurance. Instead, the Carrier Discovery Report reveals that Integon Insurance's named insured, Foertsch, insured the Volkswagen Jetta from August 15, 2015 through January 27, 2016, a year prior to the accident in question, with Progressive Groups, and that the vehicle was then insured by Foertsch's mother, Mary Foertsch, with Geico on the date of the accident.

Third, a vehicle not identified in the Declarations Sheet is a "covered auto" as an "additional vehicle" if the following conditions precedent are met: (1) the automobile was purchased during the policy period; (2) the insured asks Integon Insurance to insure it within 30 days after the insured becomes the owner; and (3) the insured insures all of its automobiles with Integon Insurance. See Q.1.-2., Definitions, Policy (pages 1-2 of 20), Exh. B. Again, the Carrier Insurance Report confirms that at no time did Foertsch request coverage of the Volkswagen Jetta with Integon.

As the Volkswagen Jetta was clearly not a "covered auto" as that term is defined in the Policy, Integon Insurance is entitled to a declaratory judgment that the Policy issued by Integon Insurance to Defendant, Foertsch, does not provide coverage for claims brought against its insured in the action captioned as Dairyland Insurance Company a/s/o Luis Garcia v. Tyler D. Shissler and David G. Foertsch, Case No.:

502019CA001963, in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida.

Because the Court has found in favor of Integon Insurance and against Dairyland Insurance and by doing so granted Integon the relief it seeks against Shissler and Foertsch, Integon Insurance's motions for default judgment against each will be denied as moot.

Finally, there is an additional issue that needs to be addressed. After Integon Insurance was ordered by the Court on May 8, 2020 to provide full answers to Dairyland Insurance's Interrogatories ##1 and 3, it took Integon Insurance only four days (two of which fell on a weekend) to produce the Carrier Discovery Report and actually answer the two Interrogatories. It follows that Integon Insurance could have easily produced the Carrier Discovery Report at the time it filed its Answers to Plaintiff's Interrogatories on January 27, 2020. Had Integon Insurance done so at that time, Dairyland Insurance would in all likelihood not have had to incur the additional attorney's fees and expenses in filing a joint stipulation of facts as well as a motion for summary judgment. Indeed, the Court is puzzled as to why Integon Insurance simply did not produce the Report on January 27, 2020 as its contents were clearly favorable to Integon Insurance's position in this case. Although Integon Insurance claims it did not think the Carrier Discovery Report was relevant and that the Policy on its own established that no coverage was mandated, as discussed *supra*, the Carrier Discovery Report was crucial to resolving this action because without it the Court was not able to fully verify Integon Insurance's claim that Foertsch never insured the 2013 Jetta with Integon. In addition, it was Integon Insurance that was the party that initiated this

declaratory judgment action. Dairyland Insurance raised as affirmative defenses that the conditions precedent to finding the Jetta to be a "covered auto" under the Policy had been met. However, when Dairyland Insurance attempted to prove its affirmative defenses, Integon Insurance denied in its Answers to Dairyland Insurance's Interrogatories that it had the requested information. Yet, Integon Insurance was able to quickly obtain this information from the Carrier Discovery Report when ordered to so by the Court.  Moreover, Integon Insurance's insured, Foertsch, has not participated in this action and therefore Dairyland Insurance could not have relied on Foertsch to provide the discovery it sought in its Interrogatories that it directed to Integon Insurance. Although the Court does not believe Integon Insurance's actions were willful, the Court will nevertheless direct Integon Insurance to reimburse Dairyland Insurance for the attorney's fees and expenses it unnecessarily incurred from January 27, 2020 as all of these expenses could have easily been avoided had Integon Insurance timely produced the Carrier Discovery Report. Dairyland Insurance shall submit an affidavit to the Court (along with a proposed Order) within 5 days of the date of the Court's Order detailing all **reasonable** fees and expenses it incurred after January 27, 2020.